Travis M. Wheeler (026415)
Sarah A. Brunswick (038432)
**BOWMAN AND BROOKE LLP**
2929 N. Central Avenue, Suite 1900
Phoenix, Arizona 85012
Tel: (602) 643-2300
Fax: (602) 248-0947
travis.wheeler@bowmanandbrooke.com
sarah.brunswick@bowmanandbrooke.com

John F. Weeks IV (*pro hac vice* forthcoming)
Steven A. Vickery (*pro hac vice* forthcoming)
**SMITH, GAMBRELL & RUSSELL, LLP**
1105 West Peachtree Street NE, Suite 1000
Atlanta, Georgia 30309
Tel: (404) 815-3500
Fax: (404) 815-3509
jweeks@sgrlaw.com
svickery@sgrlaw.com

*Attorneys for Defendant Taurus Holdings, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

|  |  |
|---|---|
| Jeni Hurrle, as Guardian of and next kin of L.H., a minor, and Jeni Hurrle, as Special Administrator of the Estate of Valarie "Elise" Hurrle, deceased, | Case No.: 2:23-cv-02372-DGC |
| Plaintiff, | **DEFENDANT TAURUS HOLDINGS, INC.'S MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM** |
| v. | |
| Taurus International Manufacturing, Inc., and Taurus Holdings, Inc., | |
| Defendants. | |

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Defendant Taurus Holdings, Inc. ("Holdings") respectfully moves to dismiss Plaintiff's Complaint with prejudice for lack of personal jurisdiction and failure to state a claim. This motion is supported by the following Memorandum of Law. Further, movant hereby certifies that, before filing this motion, movant notified the opposing party of the issues asserted in the motion as to Fed. R. Civ. P. 12(b)(6),

and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by pleading party.

**MEMORANDUM OF LAW**

*Introduction*

This is a products-liability action arising from the discharge of a GX4 pistol in Mesa, Arizona on April 7, 2023. Plaintiff alleges the pistol fired when it was dropped, killing Valarie "Elise" Hurrle ("Ms. Hurrle"). Plaintiff Jeni Hurrle, by and as Guardian of a minor and as Special Administrator of the Estate of Valarie "Elise" Hurrle, filed this lawsuit on November 13, 2023, against Holdings and a company it owns, Taurus International Manufacturing, Inc. ("TIMI"). Plaintiff's claims against Holdings should be dismissed for the following reasons.

*First*, Plaintiff has not—and cannot—meet the burden of establishing that this Court has personal jurisdiction over Holdings, a Georgia corporation that is not "at home" in Arizona for purposes of general jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). And Plaintiff cannot demonstrate specific personal jurisdiction over Holdings simply because Taurus-branded pistols can be bought in Arizona. Holdings does not buy, sell, or design firearms anywhere.

*Second*, even if there is personal jurisdiction over Holdings, the Complaint's impermissible "group pleading" fails to state a claim against Holdings. The conclusory allegations of "vicarious liability" cannot fix the lack of allegations as to Holdings because they fall far below the standard needed to plead a basis for liability by piercing the corporate veil.

*Third,* Holdings incorporates by reference the arguments to dismiss individual claims made in TIMI's separate motion to dismiss.

*Plaintiff's Complaint and Factual Background*

The Complaint alleges Enrique Jaramillo purchased a Taurus-brand GX4 pistol, bearing Serial Number 1GA67361 (the "Subject Pistol"), new from a business on or about February 1, 2022. (Compl., Doc. 1, ¶¶ 6, 7, 16.) The Complaint is silent about the location of Mr. Jaramillo's purchase. The Complaint also does not indicate how Ms. Hurrle came to possess the Subject Pistol but indicates it was her pistol and she purchased it, presumably from Mr. Jaramillo. (*Id.*

¶¶ 6, 18.) The Complaint describes the Subject Pistol as "Elise's pistol" and that Ms. Hurrle carried the Subject Pistol in a holster that was attachable to the side of her waistband. (*Id.* ¶ 16.) Plaintiff states that while Ms. Hurrle was at work on April 7, 2023, the Subject Pistol discharged a bullet after Ms. Hurrle dropped it, and the bullet hit Ms. Hurrle, causing her death. (*Id.* ¶¶ 17–18.) Plaintiff contends the Subject Pistol is "unreasonably dangerous and unfit for its intended use" because of a "Drop-Fire Defect" that results when the gun's safeties do not prevent it from firing if dropped. (*Id.* ¶6.)

TIMI and Holdings are each Georgia corporations. (*Id.* ¶ 2.) After stating that Holdings is the "one hundred percent stockholder of Defendant TIMI," the Complaint's substantive allegations are then directed almost exclusively to the "Taurus Defendants." (*Id.*) At one point, the Complaint recognizes that TIMI distributes and sells pistols in the United States. (*Id.* ¶ 15.) Counts VIII, IX, and X all attribute the breaches of duty alleged in the "preceding paragraphs" to TIMI, not Holdings. (*Id.* ¶¶ 64, 72, 77.)

Regarding Holdings and TIMI, Plaintiff further alleges: (1) "many individuals who work on designing, manufacturing, engineering, testing, inspecting, marketing, importing, distributing, supplying, and/or selling Taurus pistols, including the pistol that is the subject of this suit, are employees of both TIMI and Taurus Holdings" (*id.* ¶ 3); and (2) TIMI and Holdings "are each included as either insureds or additional insured on the same insurance policies" (*id.*). Count IX adds that TIMI Holdings and TIMI "shared offices for years," have the same CEO, and share "[a]t least some employees." (*Id.* ¶ 68.)

### ***Factual Background on Defendants and the Subject Pistol***

As the Complaint recognizes, Holdings is a Georgia corporation with its principal place of business in Bainbridge, Georgia. (*Id.* ¶ 15.) Holdings owns several companies, all of which have a principal place of business in the state of Georgia. (Declaration of Bret Vorhees ("Decl.") ¶ 5, attached hereto at Ex. 1.) Holdings does not design, import, manufacture, assemble, test, package, ship, label, advertise, promote, market, warrant, or repair firearms in any way. (*Id.* ¶ 14.) Although Holdings owns TIMI, it is a separate, distinct, and independent corporation. (*Id.* ¶¶ 15–20.) For example, TIMI and Holdings maintain separate and

3

independent by-laws, minutes, corporate records, financial records, and bank accounts. (*Id.* ¶ 17.)

TIMI imports, manufactures, sells, and services firearms, including Taurus-branded model GX4 pistols, to federally-licensed distributors and dealers throughout the United States. (*Id.* ¶ 25.) TIMI does not sell firearms directly to consumers. After it sells its firearms to a distributor or dealer, TIMI is not involved with, does not determine, and does not control where firearms are sold to retail consumers. (*Id.*) Here, TIMI assembled the Subject Pistol in Georgia and then sold it to Lipsey's, Inc. in Louisiana, transferring title on January 13, 2022. (*Id.* ¶ 13.)

### *Argument*

### I.     There is no personal jurisdiction over Holdings.

The claims against Holdings should be dismissed for lack of personal jurisdiction. Plaintiff bears the burden of establishing a prima facie showing of personal jurisdiction. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023). That standard "is not toothless," and a plaintiff "cannot simply rest on the bare allegations of its complaint." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019) (citations omitted).

As a threshold matter, the Complaint impermissibly groups Holdings and TIMI together, referring to these entities collectively as "the Taurus Defendants." (*See, e.g.*, Compl., Doc. 1, ¶ 2.) Not a single jurisdictional allegation exists, much less one referring to either entity separately. Yet the law in "[t]his circuit is clear that allegations of 'jurisdiction over each defendant must be established individually,'" and thus "grouping of the Defendants together to establish personal jurisdiction, general or specific, is inadequate." *Seldin v. HSN, Inc.*, 2018 WL 3570308, at *8 (S.D. Cal. July 25, 2018); *see In re Boon Glob. Ltd.*, 923 F.3d at 651 (noting "each party's contacts with the forum state must be assessed individually"). Plaintiff must therefore establish specific jurisdiction "as to each defendant based on *each* defendant's *own* contacts with [Arizona.]" *Skurkis v. Montelongo*, 2016 WL 4719271, at *4 (N.D. Cal. Sept. 9, 2016). As a result of Plaintiff's group pleading, the Complaint does not meet this burden and the Complaint should be dismissed for lack of jurisdiction on this basis alone. *Id.* at *6 (finding no specific jurisdiction in such circumstances); *Seldin*, 2018 WL 3570308, at *8 (same).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022). Arizona extends personal jurisdiction over nonresidents to the maximum extent allowed by the Due Process Clause of the U.S. Constitution. *Id.* Accordingly, Plaintiff must demonstrate each Defendant has "certain minimum contacts" with Arizona justifying the exercise of personal jurisdiction. *Id.* The U.S. Supreme Court has recognized two distinct applications of due process personal jurisdiction principles: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

Here, the Complaint is facially deficient. Plaintiff does not allege facts that come close to establishing that Holdings is "essentially at home" in Arizona for purposes of general jurisdiction or that it has engaged in the "purposeful direction" or "availment" necessary to support specific jurisdiction. Because Plaintiff has not and cannot allege any basis for personal jurisdiction over Holdings in Arizona, the Complaint should be dismissed.

## A.     The Court lacks general jurisdiction over Holdings.

Plaintiff cannot meet her burden of establishing a prima facie case of general personal jurisdiction over Holdings (or TIMI for that matter). A court may assert "general jurisdiction over a foreign corporation only if the corporation's connections to the forum state 'are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Williams* v. *Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011)). The paradigmatic basis for general jurisdiction exists when the corporation is incorporated or has its principal place of business in the forum state. *see Daimler*, 571 U.S. at 137. "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Ranza* v. *Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (quoting *Martinez*, 764 F.3d at 1070).[1]

---

[1] In *Daimler*, the Supreme Court recognized one "exceptional case:" a Philippines mining company was found to be subject to general jurisdiction in Ohio, despite its lack of incorporation and physical operations there, because wartime exigency had forced management

Here, Plaintiff does not attempt to plead a basis for general jurisdiction. Plaintiff acknowledges Holdings is incorporated in Georgia and has its principal place of business there. Nor has Plaintiff alleged any contacts with Arizona by Holdings (or TIMI for that matter) that are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 139. Accordingly, the Court lacks general jurisdiction over Holdings.

### B. The Court lacks specific jurisdiction over Holdings.

Plaintiff has also failed to meet her burden of establishing specific personal jurisdiction over Holdings. Unlike general jurisdiction, specific jurisdiction is case-specific. To adequately plead specific jurisdiction over a non-resident defendant, a plaintiff must establish (1) the defendant either purposefully directed its activities toward the forum or purposefully availed itself of the benefits afforded by the forum; and (2) the claim arises out of or relates to the defendant's forum-related activities. *Cont'l Motors*, 22 F.4th at 859. Plaintiff bears the burden of satisfying these first two prongs of the analysis. *Id*. Only if the plaintiff satisfies those prongs, does the burden shift to the defendant to show that the exercise of jurisdiction would not be reasonable. *Id.* Plaintiff fails to plead facts establishing either requirement for Holdings.

### 1. Plaintiff fails to plead "purposeful direction."

Courts use prong one's "purposeful direction" analysis where the claims sound in tort, as they do here.[2] *Briskin v. Shopify, Inc.*, 87 F.4th 404, 412 (9th Cir. 2023). "Purposeful direction" requires that the defendant have (1) committed an intentional act, that was (2) "expressly aimed" at the forum state, and (3) caused harm that the defendant knows is likely to be suffered in the forum state. *Id.* "Actions of third parties that the defendant does not control, even those of the defendant's contractors, tend to be less reflective of the defendant's own express aiming toward the forum . . . ." *Id.* at 420; *see Cont'l Motors*, 22 F.4th at 863 (explaining

---

to run the company from Ohio. 571 U.S. at 130, n.8, 139, n.19 (citing *Perkins* v. *Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)).

[2] Neither Ms. Hurrle nor Plaintiff have any contract claim because neither was in privity with TIMI or Holdings. The "purposeful availment" test, which is typically applied in contract cases, requires that the defendant invoke the benefits and protections of the laws in the forum state. *See Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1163 (9th Cir. 2023).

a relationship with a third party is not enough for jurisdiction). In other words, Supreme Court precedent "'requires '***something more***' than the mere placement of a product into a stream of commerce'" – even if the defendant is aware its product is going into the forum state. *Cont'l Motors*, 22 F.4th at 860 (citations omitted and emphasis added).

Here, Plaintiff does not allege any conduct by Holdings, let alone that any of Holdings' conduct was specifically directed at Arizona. There are no allegations that Holdings directed any conduct at Arizona with respect to the Subject Pistol, which was sold by TIMI to an unrelated distributor in Louisiana. (Decl. ¶ 13.) Holdings does not assemble, sell, distribute, or advertise firearms. (*Id.* ¶ 14.) Therefore, Plaintiff cannot satisfy the "something more" required to show that Holdings expressly aimed activities toward Arizona. *See Cont'l Motors*, 22 F.4th at 863 (concluding presence of four repair shops, without more, was not enough to show continuous and deliberate exploitation of Arizona market with respect to specific engine).

### 2.    Plaintiff fails to plead relatedness.

The Complaint also fails to establish that Plaintiff's claims arise out of, or relate to, Holdings' non-existent contacts with Arizona. Specific jurisdiction requires "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 265 (2017). But "mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Plaintiff "cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285. "[T]he phrase 'relate to' incorporates real limits" when determining whether an action "arises out of or relates to" the nonresident defendant's action. *Ford*, 141 S. Ct. at 1026. Relatedness requires "a close connection between contacts and injury." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023) (affirming dismissal for lack of personal jurisdiction).

Here, Holdings' ownership of TIMI is not closely connected with Arizona or the Subject Pistol being in Arizona. The "real limits" on relatedness must mean more than Holdings owning a company (TIMI), TIMI selling a firearm to a wholesale distributor in Louisiana, and then that

firearm ending up in Arizona. *See id.* ("*Ford* found [relatedness] because Ford sold the relevant models to consumers in the forum states, not because it shipped raw materials, or even completed cars, through those states."). Other than owning TIMI, Holdings is unrelated to this case.

### C.    Plaintiff may not impute TIMI's jurisdictional contacts to Holdings.

Specific jurisdiction over TIMI does not justify the exercise of specific jurisdiction over Holdings. "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities," *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003), including for jurisdictional purposes. *See Ranza*, 793 F.3d at 1070. Any attempt to impute the jurisdictional contacts of a subsidiary to a parent must satisfy due process and the applicable state law requirements for piercing the corporate veil.[3] Only "[i]n narrow circumstances" will a court "find that a corporation is the alter ego of another by piercing the corporate veil and attributing a subsidiary's contacts with the forum state to its parent company for jurisdictional purposes," *Rodriguez v. Whole Foods Mkt. Inc.*, No. CV-18-08301-PCT-SMB, 2019 WL 3220538, at *2 (D. Ariz. July 17, 2019) (citations omitted).

### 1.    Jurisdictional contacts cannot be imputed under an agency theory.

In *Daimler*, the Supreme Court invalidated the Ninth Circuit's previous agency test for purposes of general jurisdiction, but "left open the question of whether an agency relationship might justify the exercise of specific jurisdiction." *Williams*, 851 F.3d at 1023 (citing *Daimler*, 571 U.S. at 135 n.13). Addressing that question, the Ninth Circuit explained that *Daimler's* criticism of the agency test "applies no less in the context of specific jurisdiction than in that of general jurisdiction." *Id.* at 1024. It is not enough that a subsidiary "performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar

---

[3] "[M]erging parent and subsidiary for jurisdictional purposes requires an inquiry 'comparable to the corporate law question of piercing the corporate veil.'" *See Goodyear*, 564 U.S. at 930 (quoting law review article but not reaching veil-piercing theory issue).

services." *Id.* (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 918 (9th Cir. 2001), *overruling recognized by Williams*, 851 F.3d at 1024). Therefore, Plaintiff's agency allegations, which are conclusory and lack supporting factual assertions, cannot be used to impute any jurisdictional contacts from TIMI to Holdings. *See id.* at 1024–25, 1025 n.5.

Even so, Plaintiff has not attempted to show that an agency relationship existed between Holdings and TIMI for a claim in Arizona. Plaintiff must show both (1) sufficient jurisdictional contacts for jurisdiction over TIMI in Arizona and (2) that those Arizona-specific contacts can be imputed to Holdings.[4]

A federal court sitting in diversity must apply the substantive law of the forum state, including its choice-of-law provisions. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Therefore, the first step in determining whether TIMI's acts can be imputed to Holdings for jurisdictional purposes is to apply Arizona choice-of-law provisions. *Cf. McGeachy v. Pinto Valley Mining Corp.*, No. 2:16-CV-03348 JWS, 2017 WL 3130639, at *5 (D. Ariz. July 24, 2017) (dismissing parent companies after applying alter ego test under federal common law to personal jurisdiction issue in a case bringing federal claims).

"Arizona courts generally follow the Second Restatement of Conflict of Laws in determining the applicable law in a tort case." *Jensen v. EXC, Inc.*, 82 F.4th 835, 853–54 (9th Cir. 2023). "Generally, in cases where a plaintiff attempts to pierce the corporate veil of a corporation to hold an individual defendant liable, the law of the state of incorporation determines when the corporate form will be disregarded." *Bridgepoint Constr. Servs. Inc. v. Lassetter*, No. CV-16-00078-PHX-JJT, 2017 WL 372950, at *2, n.1 (D. Ariz. Jan. 26, 2017); *see TFH Properties, LLC v. MCM Dev., LLC*, No. CV-09-8050-PCT-FJM, 2010 WL 2720843, at *5 (D. Ariz. July 9, 2010) (applying Utah corporate veil piercing test to alter ego allegation); *see also* Restatement (Second) of Conflict of Laws §§ 302, 307 (1971) (directing that the law

---

[4] "A subsidiary, for example, might be its parent's agent for claims arising in the place where the subsidiary operates, yet not its agent regarding claims arising elsewhere." *See Daimler*, 571 U.S. at 135.

9

of the state of incorporation should be applied to determine the existence and extent of a shareholder's liability, as well as the rights and liabilities of a corporation). Holdings and TIMI are both incorporated in Georgia, so Georgia law should govern the issue of corporate separateness.

Under Georgia law, the "theory of apparent or ostensible agency is the legal doctrine whereby a plaintiff may subject an alleged principal to liability if the plaintiff can establish (1) that the alleged principal held out another as its agent; (2) that the plaintiff justifiably relied on the care or skill of the alleged agent based upon the alleged principal's representation; and (3) that this justifiable reliance led to the injury." *Kissun v. Humana, Inc.*, 479 S.E.2d 751, 752 (Ga. 1997) (calling the three theories of alter ego, apparent agency and joint venture "closely intertwined with one another").

Here, Plaintiff fails to show facts satisfying any of the requirements for apparent agency for contacts in Arizona. *See id.* Nor can Plaintiff do so, because TIMI does not operate in Arizona. (Decl. ¶¶ 24-27.) Moreover, Holdings cannot and does not design, import, manufacture, assemble, test, package, ship, label, advertise, promote, market, warrant, or repair firearms in any way. (Decl. ¶ 14.) Holdings has not, cannot, and will not act for TIMI because, unlike companies it owns, Holdings does not have the applicable licenses to import, sell, or repair firearms. (*Id.*) Because no agency relationship existed between Holdings and TIMI, specific jurisdiction cannot be imputed to Holdings.

### 2. Under Georgia law, any acts by TIMI directed to Arizona cannot be attributed to Holdings under a veil-piercing theory.

Plaintiff also cannot meet the high burden of imputing any jurisdictional contacts from TIMI to Holdings under a veil-piercing or alter-ego theory. Under Georgia law, the corporate entity may be pierced for "liability purposes when it is shown that the corporate form has been abused." *Baillie Lumber Co. v. Thompson*, 612 S.E.2d 296, 299 (Ga. 2005). Georgia courts are "reluctant to disregard the separate existence of related corporations by piercing the corporate veil, and have consistently given substantial weight to the presumption of separateness." *McKesson Corp. v. Green*, 597 S.E.2d 447, 455 (Ga. Ct. App. 2004) (quoting *McKesson*

1    *HBOC, Inc. v. New York State Common Retirement Fund, Inc.*, 339 F.3d 1087, 1094 (9th Cir.

2    2003)). Indeed, in Georgia, the "corporate entity may be disregarded only in *exceptional*

3    circumstances." *Id.* (emphasis added).

4          Such exceptional circumstances "include . . . such disregard for the corporate form as to

5    make the corporation a mere sham or a business conduit for the shareholder personally." *BP*

6    *Prod. N. Amer., Inc. v. Southeast Energy Grp., Inc.*, 282 F. App'x 776, 778 (11th Cir. 2008)

7    (applying Georgia law). Further, "independent corporate status may be disregarded" in the case

8    of parent and subsidiary companies only "when such factors as gross undercapitalization, fraud,

9    failure to observe corporate formalities, nonfunctioning of officers and directors, or similar

10   circumstances indicate that the subsidiary is merely the shadow of the parent." *Kissun*, 479

11   S.E.2d at 753 (quoting *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1476 (3rd

12   Cir. 1988)).

13         Moreover, under Georgia law, "equitable principles govern the alter ego doctrine."

14   *Baillie Lumber Co.*, 612 S.E.2d at 299. Consequently, "Georgia veil-piercing law requires, as

15   a minimum prerequisite, that there be insolvency on part of the corporation—that there be

16   insufficient corporate assets to satisfy the plaintiff's claim." *Great Dane L.P. v. Rockwood Serv.*

17   *Corp.*, No. CV410-265, 2011 WL 2312533, at *3 (S.D. Ga. Jun. 8, 2011); *Perry v. Unum Life*

18   *Ins. Co.*, 353 F. Supp. 2d 1237, 1240 (N.D. Ga. 2005) (calling insolvency a "precondition to a

19   plaintiff's piercing the corporate veil"). "And there is no equity jurisdiction where there exists

20   an adequate remedy at law. Solvency—having the means to pay a money judgment—means

21   there exists an adequate remedy at law." *Great Dane L.P.*, 2011 WL 2312533, at *4 (citations

22   omitted).

23         In this case, Plaintiff has not alleged specific facts concerning the "exceptional

24   circumstances" for alter-ego liability. Plaintiff does not allege that TIMI is undercapitalized,

25   failed to observe corporate formalities, or has non-functioning officers or directors. Nor could

26   Plaintiff do so. (Decl. ¶¶ 15–17.) Neither has Plaintiff alleged the "precondition" of TIMI's

27   insolvency. Nor could Plaintiff do so. (Decl. ¶ 16.) Plaintiff merely makes the conclusory

28   statement that "Taurus Holdings and TIMI are so intertwined contractually for each other's

liabilities [sic] that they are essentially one entity with regard to the allegations in this Complaint." (Compl., Doc. 1, ¶ 3.) Such conclusory allegations without any facts showing misuse of the corporate form fall far short of what is required to establish personal jurisdiction. Further, that TIMI and Holdings "shared offices," have the same CEO, are included as insured on the same insurance policies, and share "[a]t least some employees" are not evidence of misuse of the corporate form. (*See id.* ¶ 68.)[5] Nor is it significant that TIMI is presented as one of Holdings' brands. (*Id.* ¶ 68.)[6]

Plaintiff's "joint venture" theory fares no better. To begin with, Ninth Circuit precedent casts doubt on whether a joint venture theory complies with due process limitations in a personal jurisdiction analysis. *See Williams*, 851 F.3d at 1024 (explaining *Daimler*'s reasoning is "clearly irreconcilable with" a broad agency test for imputing jurisdictional contacts). In any case, Plaintiff fails to satisfy the requirements under Georgia law. A joint venture "arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control (provided the arrangement does not establish a partnership), so as to render all joint venturers liable for the negligence of the other." *Kissun*, 479 S.E.2d at 752. "The mere existence of a business interdependency does not create a joint venture." *Lowery v. Noodle Life, Inc.*, 869 S.E.2d 600, 605 (Ga. Ct. App. 2022) (quoting *Gateway Atlanta Apartments, Inc. v. Harris*, 660 S.E.2d 750, 756 (Ga. Ct. App. 2008)).

Plaintiff's complaint is devoid of any facts—or even the formulaic recitations of the necessary elements—to impose joint venture liability on Holdings. Indeed, in contravention of

---

[5] "The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza*, 793 F.3d at 1070. Even alongside total ownership, the sharing of management and employees is insufficient. *Id.* at 1073.

[6] "Courts recognize that separate corporate entities presenting themselves as one online does not rise to the requisite level of unity of interest to show that the companies are alter egos." *Chubchai v. AbbVie*, Inc., 599 F. Supp. 3d 866, 876 (N.D. Cal. 2022) (citing cases); *see Rojas v. Hamm*, No. 18-cv-01779, 2019 WL 3779706, at *10 (N.D. Cal. Aug. 12, 2019) (that one company's website re-directs visitors to the other's, or that companies "present themselves as 'one integrated company' for marketing purposes" does not establish the alter-ego theory).

12

Georgia law and federal pleading standards, Plaintiff apparently asks this Court to find Holdings liable for TIMI's alleged actions based on nothing more than the fact that Holdings owns TIMI. *See Kissun*, 479 S.E.2d at 753 (stating that a "parent/subsidiary relationship does not in and of itself establish the subsidiary as either the alter ego of the parent . . . or as the parent's actual or apparent agent").

Accordingly, Plaintiff alleges no facts to support veil piercing, so even if Plaintiff can show personal jurisdiction over TIMI, the Complaint should be dismissed as to Holdings due to lack of personal jurisdiction.

**II.     In the alternative, the claims should be dismissed for failure to state a claim.**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must plead "facts" that are sufficient "to nudge [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Doing so "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted).

**A.     The Complaint is an impermissible shotgun pleading.**

The Complaint is an impermissible "shotgun pleading" because it asserts multiple claims against multiple defendants without specifying which defendant is responsible for which act. A plaintiff who asserts "multiple claims against multiple defendants" must specify "which of the defendants are responsible for which acts or omissions [] or which of the defendants the claim is brought against." *Lebeau v. StarNet Ins.,* No. CV-23-00033-PHX-SMB, 2023 WL 5095306, at *3 (D. Ariz. Aug. 9, 2023) (citations omitted) (identifying "shotgun pleading" violations).

Plaintiff asserts ten counts against both TIMI and Holdings, but alleges no affirmative conduct by Holdings. While Plaintiff offers the conclusory statement that Defendants were "both in the business of designing, engineering, manufacturing, testing, inspecting, marketing, importing, distributing, supplying, and/or selling firearms" (Compl., Doc. 1, ¶ 2), that conclusory statement directly contradicts the later paragraphs that reference TIMI as the

distributor of firearms and only breaching party (*id.* ¶¶ 15, 64, 72, 77.) The allegation that TIMI is the wholly owned subsidiary of Holdings does not cure the defect of making all allegations against the "Taurus Defendants." (*Id.* ¶ 23-24.) Exacerbating the group-pleading problem, the ten counts at the end of the Complaint do not allege which (if any) of the preceding paragraphs are incorporated into each claim, such that the initial twenty paragraphs are either mere surplusage or were inadvertently left out by Plaintiff in the subsequent ten claims.

Thus, the Complaint should be dismissed as an impermissible shotgun pleading. *See Lebaeau*, 2023 WL 5095306, at *3 (dismissing two counts for "shotgun pleading").

### B. Plaintiff's conclusory veil-piercing allegations are not enough to state a substantive claim against Holdings.

Plaintiff's substantive counts fail to state a claim against Holdings under a veil-piercing theory of liability. It is "a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Ignoring that principle, Plaintiff improperly lumps TIMI and Holdings together without any specific allegations as to each defendant. Nowhere in the Complaint does she allege conduct by Holdings separate from TIMI that could support the claims. Instead, Plaintiff apparently seeks to make Holdings liable as the owner of TIMI without alleging the necessary facts to show that the corporate form was being misused to commit a fraud or a wrong.

As discussed in Section I.C above, there is no basis for imputing any jurisdictional contacts of TIMI to Holdings. For the same reasons, there is no basis for Holdings to be held liable for TIMI's actions, so the Complaint fails to state a claim against Holdings under Fed. R. Civ. P. 12(b)(6).

### C. Holdings incorporates by reference the arguments for dismissal of individuals counts in TIMI's separate motion.

Furthermore, for the reasons explained in TIMI's separate motion to dismiss, which is incorporated herein by reference, the following individual counts of the Complaint should be dismissed: Counts III (Breach of Implied Warranty of Merchantability), IV (Breach of Express

Warranty), and VII (Negligent Misrepresentation), VIII (Vicarious Liability, Actual Agency), IX (Vicarious Liability, Apparent Agency), X (Vicarious Liability, Joint Venture), and the Unnumbered "Combining and Concurring Conduct" count.

**Conclusion**

For the foregoing reasons, and for those reasons stated in TIMI's separate motion to dismiss, the Complaint should be dismissed as to Defendant Taurus Holdings, Inc.

Respectfully submitted, this 22nd day of December, 2023.

BOWMAN AND BROOKE LLP

By:*/s/Travis M. Wheeler*_____
    Travis M. Wheeler
    Sarah A. Brunswick
    2929 N. Central Avenue, Suite 1900
    Phoenix, Arizona 85012

    John F. Weeks IV (*pro hac vice* forthcoming)
    Steven A. Vickery (*pro hac vice* forthcoming)
    SMITH, GAMBRELL & RUSSELL, LLP
    1105 West Peachtree Street NE, Suite 1000
    Atlanta, Georgia 30309

    *Attorneys for Defendant Taurus Holdings, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:


*/s/Jeannette Felix*
An Employee of Bowman and Brooke LLP

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| JENI HURRLE, as Guardian of and next kin of L.H., a minor, and JENI HURRLE, as Special Administrator of the ESTATE OF VALARIE "ELISE" HURRLE, deceased,<br><br>          Plaintiff,<br><br>v.<br><br>TAURUS INTERNATIONAL MANUFACTURING, INC., and TAURUS HOLDINGS, INC.,<br><br>          Defendants. | Case No.: 2:23-cv-02372-DGC<br><br><br><br>**DECLARATION OF BRET VORHEES** |

I, Bret Vorhees, declare as follows:

1.      My name is Bret Vorhees, and I am over the age of eighteen years of age, of sound mind, and otherwise competent to give this Declaration.  The facts stated below are true and correct to the best of my knowledge, information, and belief.

2.      I am the Chief Executive Officer of Taurus Holdings, Inc. ("Holdings"). Holdings owns various companies that import, design, manufacture, assemble, and then sell firearms in the United States of America through the U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives-sanctioned system, that is, by sale to independent federally-licensed distributors or dealers.  None of the companies owned by Holdings sell firearms to consumers.

3.     One such company owned by Holdings is Taurus International Manufacturing, Inc. ("TIMI").  I am the Chief Executive Officer for TIMI.

4.     Based on my duties for TIMI and Holdings, I am personally knowledgeable about each company's business and the facts set forth below.

5.     Holdings is a Georgia corporation with its principal and only place of business in Bainbridge, Georgia.

6.     TIMI is a Georgia corporation with its principal and only place of business in Bainbridge, Georgia.

7.     Holdings owns all of the shares of TIMI.

8.     TIMI holds a Type 7 "Manufacturer of Firearms Other than Destructive Devices" Federal Firearms License ("FFL").  TIMI also holds a Type 8 "Importer of Firearms Other than Destructive Devices" FFL.  I am one of the Responsible Persons on TIMI's FFLs.

9.      In that role, I am ultimately responsible for all aspects of TIMI's import and manufacture of firearms in the United States, including adherence to and compliance with a myriad of U.S. federal and state rules and regulations governing the firearms industry.

10.    More specifically, one of my responsibilities is to ensure that TIMI complies with 27 C.F.R. §§ 478.101 & 123, which require a licensee to "record . . . the type, model, caliber or gauge, and serial number . . . of each firearm manufactured or otherwise acquired" and thereafter maintain, a Firearms Acquisition & Disposition Record Book— known in the industry as an "A&D" or "A&D Book."  This same federal regulation also requires a licensee to record a disposition or transfer of the firearm in like manner.

2

11.     TIMI has permission from the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives' Director of Industry Operations to maintain its A&D electronically.

12.     I have been informed that this lawsuit involves a Taurus GX4 pistol bearing serial number 1GA67361 the ("Subject Pistol").

13.     Attached as **Exhibit A** is a true and correct copy of the A&D entry showing TIMI's acquisition of the Subject Pistol on January 13, 2022, and disposition of the Subject Pistol to Lipsey's, Inc., located at 7277 Exchequer Drive Baton Rouge, Louisiana 70809, on January 17, 2022.

14.     Holdings does not have a FFL, and therefore cannot and does not design, import, manufacture, assemble, test, package, ship, label, advertise, promote, market, warrant, or repair firearms in any way.

15.     Although owned by Holdings, TIMI is a separate, distinct, and independent corporation. The separate corporate identities of TIMI and Holdings have been maintained.

16.     TIMI is adequately capitalized.

17.     TIMI and Holdings maintain separate and independent boards of directors, by-laws, minutes, corporate records, financial records, and bank accounts.

18.     TIMI and Holdings do not treat the assets of one entity as the assets of the other.

19.     Holdings does not direct the day-to-day operations of TIMI.

20.     Holdings is not a shell or sham corporation of TIMI.  And TIMI is not a shell or sham corporation of Holdings.

21.     The limited warranties covering Taurus-branded firearms are offered by and honored by TIMI.

22.     Holdings does not have any employees, officers, directors, agents, managers, salespersons, offices, business or manufacturing facilities, inventory, assets, telephone numbers, bank accounts, or other personal property in the state of Arizona.  Holdings has never owned, leased, occupied, or otherwise held any interest in any real property located in the State of Arizona.

23.     Holdings, as well as the companies it owns such as TIMI, are not authorized, licensed, or registered to conduct business with the Arizona Secretary of State.

24.     Further, TIMI does not have any employees, officers, directors, agents, managers, salespersons, offices, business or manufacturing facilities, inventory, assets, telephone numbers, bank accounts, or other personal property in the State of Arizona. TIMI has never owned, leased, occupied, or otherwise held any interest in any real property located in the State of Arizona.

25.     The firearms that TIMI imports, manufactures, or assembles, including Taurus-branded GX4 pistols, are sold from Georgia to federally-licensed distributors and dealers throughout the United States. TIMI does not sell firearms directly to consumers. The distributor and dealer customers of TIMI are owned by individuals or entities not connected to TIMI or Holdings; they are not owned or controlled by Holdings or TIMI. After it sells firearms to a distributor or dealer, TIMI is not involved with, does not determine, and does not control where the firearms are then sold to retail consumers.

26.     TIMI did not produce the GX4 model pistol specifically for use in Arizona.

27.     TIMI does not direct its marketing or advertising for the GX4 model pistol directly to Arizona or Arizona residents.

28.     Attached hereto as **Exhibit B** is a true and correct copy of the instruction manual and limited warranty for the GX4 model pistol assembled by TIMI. A copy of this document is placed in each GX4 TIMI sells to federally-licensed firearms distributors and dealers.

29.     Any warranty work for Taurus-branded firearms, such as the GX4 pistol, is performed at TIMI's facility in Georgia.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this  21st  day of December, 2023.

Bret Vorhees

5

# EXHIBIT A

# Serial Search For Serial #:  1GA67361

**Transaction History Results**

| Serial # | Sys \| Doc | Origin \| FFL | Mfg \| Name | Model \| Date | Entity \| Address |
|---|---|---|---|---|---|
| 1GA67361 | GP10-2004M | USA | Taurus Int. Mfg,.Inc | 1-GX4M931 | 1-58-087-07-2F-14382 |
| Acquisition >> | 00000000000324170 | 58-14382 | Taurus | 1/13/2022 | Taurus 100 Taurus Way  Bainbridge, GA 39817 |
| Disposition >> | 02-SLSDIS00306578 | 72-09424 | LIPSEY S INC. | 1/17/2022 | LIPSEY S INC. 7277 EXCHEQUER DRIVE  BATON ROUGE, LA 708090000 |

**Microfische Results**

| Serial # | Microfische |
|---|---|

**Acquisition Results**

| Serial # | Doc | FFL | Name | Date | Address |
|---|---|---|---|---|---|
| 1GA67361 | 00000000000324151 | | | 1/13/2022 | , |
| 1GA67361 | 00000000000324170 | 58-14382 | Taurus | 1/13/2022 | 100 Taurus Way  Bainbridge, GA 39817 |

**Repair Results**

| Serial # | SO # \| Rcv \| Ship | Status \| Tracking In \| Out | Model | Last Location \| Name \| Address |
|---|---|---|---|---|

**Current Inventory Results**

| Serial # | Doc \| Location | FFL \| Cal-Ga | Name \| Mfg | Model \| Type | Acquisition |
|---|---|---|---|---|---|

# EXHIBIT B



**TAURUS**

**GX4**™

INSTRUCTION MANUAL

## GENERAL SAFETY, OPERATING INSTRUCTIONS AND LIMITED WARRANTY

### READ CAREFULLY BEFORE USING YOUR FIREARM

**Important: Keep this manual with your firearm.**

The information contained in this manual is useful, both for beginners and experienced shooters.  In addition to important information about the function, cleaning and care of the firearm, this manual contains instructions that will be very helpful in shooting safely.

**The most important rule of safe firearm handling is always keep the muzzle pointed in a safe direction!**



**TaurusUSA.com**    /TaurusUSA    @taurususa    /TaurusUSA

- Available in 9mm Luger
- Matte Black Finish
- Single Action Only (Striker Fire)
- Drift adjustable rear sight
- Flat face Target Trigger
- Trigger Safety Blade
- Signature Indexing and Recoil Management Pad (RMP)

# CONTENTS

Firearm Safety.......................................................... 5

Get To Know Your Pistol...................................... 12

Ammunition ........................................................ 16

Operating Instructions........................................ 20

Disassembly ........................................................ 24

Assembly ............................................................. 27

Care and Maintenance........................................ 28

T.O.R.O. Configuration........................................ 29

Exploded View..................................................... 32

Taurus® Service .................................................. 34

## ⚠ WARNING

The safety warnings in this booklet are important. By understanding the dangers inherent in the use of any firearm, and by taking the precautions described herein, you can safely enjoy your Taurus® firearm. Failure to follow any of these warnings can result in serious injury to you or others, as well as severe damage to the firearm or other property.

**2**   Always keep the muzzle pointed in a safe direction and finger off the trigger.

Always keep the muzzle pointed in a safe direction and finger off the trigger.   **3**

# NOTES

## SIGNAL WORDS AS DEFINED BY ANSI Z535.6 AND Z535.4 STANDARDS.



| ⚠ **DANGER** | DANGER indicates a hazardous situation which, if not avoided, will result in death or serious injury. |
| --- | --- |
| ⚠ **WARNING** | WARNING indicates a hazardous situation which, if not avoided, could result in death or serious injury. |
| ⚠ **CAUTION** | CAUTION indicates a hazardous situation which, if not avoided, could result in minor or moderate injury. |
| *NOTICE* | NOTICE is used to address practices not related to physical injury. |

---

## ⚠ WARNING

When a firearm discharges, the bullet or shot can strike a person, resulting in death or serious bodily injury.

The three basic keys to safe handling of firearms:

**1. KEEP THE MUZZLE POINTED IN A SAFE DIRECTION.** Even if the firearm discharges, if the muzzle is pointed in a safe direction, no one will be injured.

**2. KEEP YOUR FINGER OFF THE TRIGGER UNTIL YOU ARE READY TO FIRE.** If you maintain good trigger discipline, it is extremely unlikely the firearm will fire.

**3. NEVER TRUST ANY SAFETY MECHANISM.** If you adopt the attitude that you will not trust any safety mechanism, you will be vigilant about keeping your finger off the trigger and keeping the muzzle pointed in a safe direction.

## ⚠ WARNING - KNOW YOUR TARGET

Never fire at targets at close range. Ricochets can and do cause death or serious bodily injury. What constitutes "close range" depends on many factors including target material, bullet caliber and angle of impact.

**KNOW WHAT IS BEHIND YOUR TARGET.** Unless you are shooting into a bullet trap designed to capture the type of ammunition you are firing, projectiles may pass through the target and strike anyone or anything beyond. Bullets can travel miles.

**ALWAYS WEAR HEARING PROTECTION.** Firearms are loud. The sound they generate is greater indoors. Repeated exposure to loud noises can cause deafness. Hearing protection is rated by decibel reduction. Look for "dB" reduction of 30 or more when purchasing ear protection. Modern ear protection can allow normal hearing until the sound from the discharge reaches the ear. By layering hearing protection, for example, wearing 30db rated foam plugs with 20db rated ear muffs, significant protection can be achieved.

**ALWAYS WEAR EYE PROTECTION.** In normal operation, firearms emit hot high-velocity gases, particles and metal. These materials flying into your eye can cause blindness. Protect your vision with proper eye protection. Any eye protection may be better than none, but look for ANSI Z87.1-2003 certified eyewear for the best protection.

**NEVER HANDLE FIREARMS WHILE UNDER THE INFLUENCE OF DRUGS OR ALCOHOL.** Firearms are dangerous. Handling firearms while impaired by drugs or alcohol is foolhardy and can result in serious injury or death. This warning includes prescription drugs that contain a warning about using machinery or driving while taking the medication.

**MODIFIED FIREARMS ARE DANGEROUS, AND USE CAN RESULT IN SERIOUS INJURY OR DEATH.** "Trigger jobs," polishing original components or installing aftermarket parts can cause a firearm to function in ways different than intended. Some such work may also be illegal.

**DAMAGED FIREARMS ARE DANGEROUS, AND USE CAN RESULT IN SERIOUS INJURY OR DEATH.** Repairs should always be made by a qualified gunsmith or by a factory-authorized repair site. Work done by those unfamiliar with the design can cause a firearm to function in ways different than intended.

**NEVER ATTEMPT TO DISASSEMBLE OR CLEAN A LOADED FIREARM. DOING SO CAN RESULT IN SERIOUS BODILY INJURY OR DEATH.** How often have we heard "But it went off while I was cleaning it!" or, "I did not know it was loaded!" or, "It was jammed, and I tried to take it apart!"?

**IF A FIREARM GOES OFF, THERE WAS A ROUND OF AMMUNITION IN THE CHAMBER.** Period. "Clear" (or empty) the firearm of all ammunition before disassembling or cleaning.

As owner of your new Taurus® firearm, you are responsible for (1) keeping your finger off the trigger, (2) pointing the muzzle in a safe direction, (3) removing the magazine, (4) pulling the slide to the rear and locking it back, and (5) looking and feeling in the magazine well and chamber to confirm the pistol is empty. An empty firearm cannot fire.

## FIREARMS SAFETY SYSTEMS

Firearms safety is supported by a system. With your pistol, the system is made up of the following:

**1. You!** Your involvement in safety cannot be overemphasized. No safety component can keep your finger off the trigger and the muzzle pointed in a safe direction. Also, you are the key to never trusting any of the mechanical parts of the safety system.

**2. Indexing Pad/(RMP).** It is important to keep your finger off the trigger until you are ready to press the trigger and fire the pistol. If you keep your finger off the trigger you will not press it by accident and fire the pistol before you are ready to do so, thereby avoiding accidents. The indexing pad/(RMP) gives you a consistent place to put your trigger finger off the trigger, but in a ready position.



> ⚠️ **WARNING**
>
> The rules of safe firearm handling must be followed, even with the manual safety activated.

**3. Trigger Safety.** The trigger safety's purpose is to prevent the trigger mechanism from being actuated in the event the firearm was accidentally dropped. Once you are ready to fire, the trigger safety will move automatically in the fire position as you press the trigger.

**4. Firing Pin Block.** The firing pin block's purpose is to prevent the gun from firing in the event the firearm was accidentally dropped. The firing pin block interferes with the forward travel of the firing pin until the trigger is pulled. Once you are ready to fire, pressing the trigger moves this safety component from its "safe" (blocking) position to its "fire" (free) position.

**5. Trigger Guard.** This is a physical obstruction that helps prevent unintended pressing of the trigger or trigger safety. Do not modify the trigger guard.

**6. This Manual.** Taurus intends for you to use this manual to learn about your pistol and to help you use your pistol safely. If you use the manual, you will be a long way toward being a knowledgeable and safe firearms owner.



# PISTOL AND REVOLVER SIZE AND SAFETY

The selection of a revolver versus a pistol as well as the size, caliber and magazine capacity of a handgun are personal choices. There are many choices to be made, and there are advantages and disadvantages for each. When selecting a pistol, size has safety implications because of the way pistols are loaded.

Generally speaking, smaller handguns may require more attention to be handled safely than medium or full-size handguns. This is because their small size makes it easier to point the muzzle at your hand or to "sweep" (swing the muzzle across your body) yourself in ordinary handling.

When chambering a round, we recommend pulling the slide to the rear by gripping the rear of the slide, with the muzzle pointed straight and away from your body and in a safe direction.

## SAFE CARRY CONDITION

"Safe Carry Condition" is the most ready-to-fire condition that the user feels is reasonable under the circumstances. Generally, we believe that Taurus® pistols should be carried with a full magazine and an empty chamber. Under most circumstances, this provides the best balance of readiness and safety. On the plus side, if the chamber is empty, unintended discharges are minimized. However, the slide must be manipulated to load a round in the chamber. In emergency circumstances, this can be difficult to do safely and correctly.

If the user believes that he or she is faced with an increased threat, chambering a round is appropriate. For safety reasons, this should be done beforehand with the muzzle pointed in a safe direction, your finger off the trigger and on the indexing pad/(RMP). If equipped, place the manual safety in the "safe" position. How do you know you may be going into a more dangerous situation? That depends. If, for example, you carry cash to deposit after a business closing, this may well qualify. If a domestic partner is actively threatening you, this may qualify as well.

"Safe Carry Condition" is a judgment call and must be made by the user. Some users routinely face greater threats than others. Users must be aware of their situation and circumstances. Errors in judgment can have dire and tragic outcomes if firearms are present.

## CARRYING FIREARMS

Carrying a firearm can be dangerous. Carrying a firearm makes it more difficult to control the muzzle and makes it more likely that the firearm can be dropped or bumped causing the firearm to fire.

In almost all circumstances, it is safest to carry a handgun in a holster designed for that specific handgun. Carrying a handgun in a pocket without a specific designed In-Pocket Holster or a trigger shield or in a waist band without a belt clip is always a last choice. Carrying any handgun in a holster that fits the firearm and style of carry should prevent it from accidentally falling and you from losing control of the muzzle.

Except in rare high-threat circumstances, carry your pistol with a full magazine and an empty chamber. If the chamber is empty, the pistol cannot fire.

### ⚠ WARNING - CARRYING

Do not carry your firearm in any way that might let it fall or be bumped. If a firearm falls or is bumped, it may fire.

### ⚠ WARNING - CARRYING

Always review and follow the holster or luggage manufacturer's instructions or the firearm may fall or be bumped and fire.

## FIREARMS STORAGE AND GUN LOCKS

How you secure your firearms is a personal choice based on the unique circumstances in your home, business or vehicle and the laws of the state where your firearm is located. Any choice you make about securing your firearms will present advantages and disadvantages. You must weigh those advantages and disadvantages and choose which security method is best for you and those around you.

### ⚠ WARNING - LOCKING

Never lock a firearm with a round of ammunition in the chamber. Unlocking a loaded firearm makes it more difficult to maintain trigger discipline and to keep the muzzle pointed in a safe direction.

### ⚠ WARNING

Securing your firearm may inhibit access in a defensive situation and may result in injury or death.

### ⚠ WARNING

Failure to secure a firearm may result in injury or death. Properly securing a firearm means storing your firearm unloaded, decocked and securely locked, with all ammunition in a separate location.



# GET TO KNOW YOUR PISTOL



FRONT SIGHT

SLIDE

TAKE DOWN PIN

BARREL

SLIDE CATCH

REAR SIGHT

INDEXING PAD

TRIGGER SAFETY

TRIGGER GUARD

TRIGGER

MAGAZINE RELEASE

INTERCHANGEABLE BACKSTRAP

GRIP

VISUAL LOADED CHAMBER INDICATOR

MAGAZINE

# SPECIFICATIONS

| Model | Taurus GX4 |
|---|---|
| Caliber | 9mm Luger* |
| Action | Single action only |
| Capacity | 11 + 1 rounds |
| Barrel Length | 3.06" |
| Overall Length | 6.05" |
| Overall Height | 4.30" |
| Overall Width | 1.00" |
| Weight (with empty magazine) | 18.5 oz. |
| Sights | Serrated Steel rear sight (Adjustable) Steel front sight with white dot |
| Materials | Frame: Stainless Steel Alloy Slide: Alloy Steel, Gas Nitride Treatment Barrel: Stainless Steel. Black DLC Coating Grip: Polymer |
| Safety Devices | Firing pin block, Trigger safety, Visual loaded chamber indicator |
| Finish | Matte black and matte stainless steel |
| Remarks | Reversible magazine release, Interchangeable backstrap |

## NOTICE

*9mm Luger is a cartridge caliber also commonly known as: 9mm / 9x19 / 9x19mm / 9mm Parabellum / 9mm Para

# LOCKING DEVICE INSTALLATION INSTRUCTIONS

---

### ⚠ WARNING - LOCKING DEVICES

- Always keep your firearm pointed in a safe direction, including when you are installing or removing your locking device.

- Always verify that your firearm is completely unloaded (see page 24) before installing your locking device.

- Do not install locking devices in the trigger guard; always keep your fingers and locking device outside the trigger guard during device installation and removal.

- Store firearms, ammunition and keys separately and securely, away from children and careless adults; do not store your firearm with the keys in the locking device.

- Do not attempt to work the action of your firearm with the locking device in place; this may damage your firearm.

- While locking devices are an important aid to security measures, they are not a substitute for safe firearm handling and proper storage. Remember that any mechanical device can be bypassed with enough time, knowledge, determination and equipment.

**LOCKING DEVICES MUST BE USED SAFELY AND RESPONSIBLY**

---

**It is important to use the locking device on your Taurus® firearm!**
Keep the muzzle pointed in a safe direction and your fingers outside the trigger guard at all times during installation of the locking device!

**To Install the Factory-Supplied Locking Device:**



1. Remove the magazine from your pistol.
2. Open the action completely, and verify that the firearm is completely unloaded and contains no cartridges or cartridge cases! Use the slide catch to keep the action open during installation of the locking device.
3. Insert the cable directly in your pistol as shown in Figure 1.
4. To lock: With the key turned to the farthest clockwise position, insert the loose end of the cable into the lock. Turn the key counterclockwise and remove the key.
5. Once the lock is securely closed, pull firmly on the lock to test the connection and be sure it is locked. Do not leave or store your firearm with the key in the lock! Store your locked, unloaded firearm and the key in secure, separate locations, away from ammunition, children, and unauthorized adults.



### ⚠ WARNING

Never leave your keys in the lock when the lock is installed on the firearm.

14   Always keep the muzzle pointed in a safe direction and finger off the trigger.

Always keep the muzzle pointed in a safe direction and finger off the trigger.   15

> ⚠️ **WARNING**
>
> Using the wrong ammunition in your pistol can result in serious bodily injury and damage to your pistol. Make certain the ammunition you load in the magazine is the same caliber as is marked on the pistol.

> ⚠️ **WARNING - AMMUNITION AND INDUSTRY STANDARDS**
>
> Use only clean, dry factory-loaded ammunition. Old, damaged, wet or oily ammunition may fire at pressures higher than industry standard, causing injury to you and bystanders or damage to your pistol.
>
> Do not use reloaded ammunition in your pistol. Its firing pressures are unknown and may well exceed industry standard, causing injury to you and bystanders or damage to your pistol.
>
> Odd sounds are signs of trouble. If a round "does not sound right" when it goes off, stop firing right away. A bullet may be stuck in the barrel. Firing the pistol in this condition may cause pressures higher than industry standard, causing injury to you and bystanders or damage to your pistol.
>
> If you hear any odd sounds when firing your pistol, stop firing, clear the pistol and "field strip" (or disassemble) the pistol in accordance with the procedures listed in this manual. Once the barrel is removed from the slide, look down the bore. If you do not see light, there is something stuck in the bore. Do not fire the pistol again, and take the pistol to a qualified gunsmith or contact the Taurus® Service department at 800-327-3776.

> ⚠️ **WARNING - LEAD EXPOSURE**
>
> Discharging firearms in poorly ventilated areas, cleaning firearms or handling ammunition may result in exposure to lead and other substances known to the state of California to cause birth defects, reproductive harm and other serious physical injury. Have adequate ventilation at all times. Wash hands thoroughly after exposure with soap and cold water.
>
> **SHOOTING OR CLEANING GUNS MAY EXPOSE YOU TO LEAD**

> ⚠️ **WARNING**
>
> "+P" ammunition can be dangerous. There is a detailed discussion about "+P" and "+P+" ammunition on page 18 of this manual. Until you have read that information, do not fire any ammunition marked "+P" in your pistol.

> ⚠️ **WARNING**
>
> Never fire ammunition marked "+P+" in your pistol. +P+ may not comply with industry standards as to chamber pressures.

> ⚠️ **WARNING**
>
> It is DANGEROUS to fire "+P+" ammunition in any Taurus® firearm, and doing so may result in serious bodily injury or death. The Sporting Arms and Ammunition Manufacturers Institute (SAAMI) does not recognize any "+P+" ammunition at all. These loads operate at unknown pressures.

**16**   Always keep the muzzle pointed in a safe direction and finger off the trigger.

Always keep the muzzle pointed in a safe direction and finger off the trigger.   **17**

There are only four calibers that can carry a +P rating from SAAMI. They are 38 Special +P, 9mm Luger +P, 38 Super Automatic and 45 Automatic +P. There are no other SAAMI approved "+P" loads. Any ammunition in any other caliber marked "+P" is not SAAMI compliant, may be dangerous and should not be used.

Only fire SAAMI rated Plus P ("+P") ammunition in Taurus® models designated by Taurus for +P use as below. **Firing +P ammunition in other Taurus products may be dangerous and can result in serious bodily injury or death.**

Model 856 small-frame revolver in 38 Special.
Model 850 small-frame revolver in 38 Special.
Model 851 small-frame revolver in 38 Special.
Model 85 Polymer small-frame revolver in 38 Special.
Model 82 medium-frame revolver in 38 Special.
Model 817 compact frame (tracker) revolver in 38 Special.
All firearms chambered in 38 Super Automatic.
All firearms chambered in 45 Automatic (ACP).
All firearms chambered in 9mm Luger.

---

## *NOTICE*

Even if your Taurus® firearm is rated for Plus-P ("+P") ammunition, such ammunition generates pressures significantly in excess of the pressures associated with standard ammunition. Such pressures may affect the useful life of the firearm or exceed the margin of safety built into many firearms. Unless you need +P ammunition, do not use it, particularly for practice.

---

# FIREARMS ARE NOT ALL ALIKE

Many makes and models of firearms might LOOK nearly the same. However, they differ widely in design, operation, and in the location and function of various controls. You may access the Taurus® website at TaurusUSA.com to view and print manuals.

## "JAMS"

**SOMETIMES A CARTRIDGE OR SHELL CASE MAY BECOME "JAMMED" OR STUCK IN THE PISTOL. TO CLEAR THE JAM, (1) POINT THE MUZZLE IN A SAFE DIRECTION, (2) KEEP YOUR FINGER OFF THE TRIGGER AND ON THE INDEXING PAD/(RMP), (3) REMOVE THE MAGAZINE, THEN (4) PULL BACK THE SLIDE AND LOCK IT TO THE REAR. THE JAMMED CARTRIDGE OR CASE CAN NOW BE REMOVED BY SHAKING OR PICKING IT OUT.**

⚠ **WARNING - FIRING**

The slide opens and shuts quickly while firing. Keep your face and hands away from rear of slide. Hot brass is ejected quickly and can burn you. Always wear shooting glasses, hat with brim, and hearing protection.

⚠ **WARNING - ANY GUN MAY FIRE IF DROPPED**

If dropped or struck, the pistol may fire.

⚠ **WARNING**

If dropped or struck the firearm should be inspected by a trained armorer/gunsmith for a complete function check. After the firearm was dropped or struck, mechanisms, including automatic safeties, may not function as intended resulting in accidental death or serious injury.

# OPERATING INSTRUCTIONS

## NOTICE

The Taurus GX4 has a striker firing mechanism that operates as a conventional single action system. In other words, each time the slide cycles the striker is cocked.



1. To remove the magazine press the **magazine release button**, located near the **trigger guard**, with your thumb.



2. To load the **magazine** hold the bottom of the **magazine** with one of your hands and with the other hand insert the cartridges one at a time, pressing them down and to the rear. Insert the **magazine** into the pistol until it is held by the **magazine catch**. If the **magazine** is not correctly inserted into the pistol, it can fall out when you intend to shoot.



3. Hold the pistol with one hand keeping your finger away from the trigger and on the **Indexing pad/(RMP)**. With the other hand pull the **slide** to its rear limit and release it, the **slide** will go forward under **recoil spring** pressure and will insert one cartridge into the **chamber**.



4. The pistol is now ready-to-fire by pressing the **trigger**. After firing, the **slide** will recoil from gas pressure, ejecting the empty case and feeding another cartridge into the **chamber** from the **magazine**. The pistol is now ready to fire again.

**20**  Always keep the muzzle pointed in a safe direction and finger off the trigger.

Always keep the muzzle pointed in a safe direction and finger off the trigger.  **21**



5. After the last round, the **slide** will remain in the open position held by the **slide catch**. To return the slide to its rest position, press the **slide catch** downward just above the **left grip** or pull the **slide** to the rear and release it (you must remove the empty **magazine** first).

> ## ⚠ WARNING
>
> These Taurus pistols do not have a magazine disconnect (safety). They are capable of firing with the magazine removed.

> ## ⚠ WARNING - FIRING
>
> The slide opens and shuts quickly while firing. Keep your face and hands away from rear of slide. Hot brass is ejected quickly and can burn you. Always wear shooting glasses, hat with brim, and hearing protection.

> ## ⚠ WARNING - ANY GUN MAY FIRE IF DROPPED
>
> If dropped or struck, the pistol may fire.

*Intentionally left blank*



## DISASSEMBLY

> ### ⚠ WARNING
>
> Always wear eye protection that is specified for use with firearms (ANSI Z87.1+) every time you handle your firearm for cleaning and maintenance.



1. Before disassembly, always (1) keep your finger off the **trigger** and on the **Indexing pad/(RMP)**, (2) point the **muzzle** in a safe direction, (3) remove the **magazine** by pressing the **magazine release button**, (4) Clear the **chamber** and make sure it is empty, and (5) look and feel the **magazine** well and **chamber** to confirm the pistol is empty. An empty firearm cannot fire.



> ### ⚠ WARNING
>
> After removing the magazine, always check the chamber and make sure it is empty.

2. On the right side of the pistol is the **take down pin** (see page 12), using a flat head screwdriver, rotate the **take down pin** 1/4 turn counterclockwise to unlock the **slide** from the **grip**.



3. While pointing the pistol in a safe direction, pull the **trigger** and push the **slide** forward away from the **grip** to separate it from the **slide**.



4. Release the **recoil spring assembly** from its position on the bottom of the **barrel**.

> ### ⚠ WARNING
>
> Take care to prevent the forcible ejection of the recoil spring assembly as the spring is compressed.



5. Remove the **barrel** from the **slide** by pulling it to the front and up.

## MAGAZINE DISASSEMBLY

## ASSEMBLY



> ⚠️ **WARNING**
>
> Take care to prevent the forcible ejection of the magazine spring plate and compressed magazine spring.



> ⚠️ **WARNING**
>
> Always wear eye protection that is specified for use with firearms (ANSI Z87.1+) every time you handle your firearm for cleaning and maintenance.

1. Use a **punch** to press in on **magazine spring seat/clip** as shown in figure 1.

2. Slide the **magazine floor plate** toward the front of the magazine as shown in figure 2.

3. Withdraw **magazine spring plate** and **magazine spring** from **magazine body**. Turn magazine upside down and remove magazine follower.



> ⚠️ **WARNING**
>
> No further disassembly is recommended unless done by a qualified gunsmith.

In order to reassemble the pistol, proceed by reversing the disassembly procedure and observe the following details:



1. Place **barrel** in the **slide** and push it to the rearward position.



2. Insert the **recoil spring** assembly into the **slide** over the **barrel**, compressing the **spring** slightly to get it into position.



3. The **slide** should be mounted on the **frame** and pulled fully to the rear. Engage the **slide catch**. Using a flat head screwdriver, rotate the **take down pin** clockwise 1/4 turn until the slot is positioned vertically. Release the **slide** by pulling down on the **slide catch**.

4. With the **magazine** removed, you should cycle the **slide** several times, to insure that the **barrel / slide / frame** fit together properly.

## CARE AND MAINTENANCE

The firearm may be cleaned and lubricated under normal conditions with the disassembly steps described in pages 24-25. We recommend you clean and lubricate your firearm at least every 200 rounds for optimal performance. At the same time check for any lose screws or pins. Tighten the screws and press pins back in as needed.

To keep a firearm safe and in good working condition, it must be kept clean and covered with a light film of good quality gun oil to prevent corrosion. The barrel bore should be cleaned and left free of debris. Follow these steps:

> ⚠ **WARNING**
>
> Before cleaning, (1) point the muzzle in a safe direction, (2) keep your finger off the trigger and on the indexing pad/(RMP), (3) remove the magazine, then (4) pull back the slide and lock it to the rear, (5) look and feel the magazine well and chamber to confirm the pistol is empty. Never attempt to clean a loaded firearm.

- Remove excessive firing residue from the bore and chamber using a properly fitted brass brush dipped in a gun cleaning solvent. Finish the bore cleaning process by running a dry cotton cloth patch through the bore to remove remaining residue and solvent.

- Clean the exterior of the firearm, slide and rails using a non abrasive cleaning cloth. Remove dust and residue from small crevices using a small brush.

- Lubricate the frame rails and barrel lockup points.

- After cleaning, rub the pistol with a lightly oiled cloth.

Please note that a firearm with laser should not be cleaned in a well or supersonic machine that submerges the firearm, as this process can damage the laser system.



## TORO
### TAURUS® OPTIC READY OPTION

## INSTALL INSTRUCTIONS

The Taurus GX4 T.O.R.O. comes with a factory-installed slide cover. Use the following instructions to install a red dot sight:

- Remove the slide cover from the slide by removing the 2 screws (screw type M4x0.7).

- Ensure the surface of the slide under the cover is clean and free of debris.

- Place desired red dot sight on top of the slide. Additional positioning pins are only necessary for some models. If using the Trijicon Red Dot, you will need an adapter plate (see page 31).

- Place a small amount of Loctite 242 on the thread of each screw selected for the desired red dot. **We recommend the use of the screws included with your Optic of choice but verify that they are (M4 x 0.7mm). Alternatively you may also use the screws provided with the slide cover. Make sure you have a minimum of 4 threads of engagement.**

- Screw in the two screws applying 8.2 in-lbs of torque.

- Let the Loctite cure for a period of 24 hours before using the firearm.

## COMPATIBLE RED DOT SIGHTS

Riton 3 TACTIX MPRD 2

SIGHT MARK MINI SHOT A-SPEC M3

Shield RMSc

Holosun HS507k

Sig RomeoZero

Hex Wasp

Trijicon RMRcc*

*NOTE: The adapter plate for the Trijicon red dot is sold separately. Available at ShopTaurus.com

**28**  Always keep the muzzle pointed in a safe direction and finger off the trigger.

Always keep the muzzle pointed in a safe direction and finger off the trigger.  **29**

# T.O.R.O. EXPLODED VIEW



COVER SCREWS (TORX - T15)

SLIDE COVER

ADDITIONAL POSITIONING PIN*

(M4 x 0.7 THREAD)

SLIDE

COVER SCREWS (TORX T-15) OR OPTIC SCREWS

OPTICS SIGHT
(Not included)

ADDITIONAL POSITIONING PIN*

(M4 x 0.7 THREAD)

SLIDE

OPTIC SCREW
(Not included)

OPTICS SIGHT
(Not included)

COVER SCREWS (TORX - T15)

TRIJICON ADAPTER PLATE*
(Not included)

ADDITIONAL POSITIONING PIN

(M4 x 0.7 THREAD)

SLIDE

*Additional positioning pins are only necessary for some models.

*NOTE: Adapter plate for the Trijicon red dot sold separately, Available at: ShopTaurus.com

# EXPLODED VIEW



## PART LIST

| | |
|---|---|
| 1 | SLIDE ASSEMBLY |
| 1.1 | SLIDE |
| 1.2 | FRONT SIGHT |
| 1.3 | EXTRACTOR PIN SPRING |
| 1.4 | EXTRACTOR PIN |
| 1.5 | EXTRACTOR |
| 1.6 | EXTRACTOR SPRING |
| 1.7 | FIRING PIN BLOCK SPRING |
| 1.8 | FIRING PIN BLOCK |
| 1.9 | FIRING PIN ASSEMBLY |
| 1.9.1 | FIRING PIN SPRING BUSHING |
| 1.9.2 | FIRING PIN SLEEVE |
| 1.9.3 | FIRING PIN RETURN SPRING |
| 1.9.4 | FIRING PIN |
| 1.9.5 | FIRING PIN SPRING |
| 1.10 | SLIDE CAP |
| 1.11 | REAR SIGHT |
| 1.12 | FRONT SIGHT SCREW |
| 2 | BARREL |
| 3 | RECOIL SPRING ASSEMBLY |
| 3.1 | INTERNAL RECOIL SPRING GUIDE |
| 3.2 | EXTERNAL RECOIL SPRING GUIDE |
| 3.3 | ASSEMBLY RECOIL SPRING SCREW |
| 3.4 | EXTERNAL RECOIL SPRING |
| 3.5 | INTERNAL RECOIL SPRING |
| 4 | FRAME ASSEMBLY |
| 4.1 | FRAME |
| 4.2 | BARREL DISCONECTOR AXIS |
| 4.3 | REAR SUPPORT |
| 4.4 | SEAR |
| 4.5 | SEAR PIN |
| 4.6 | SEAR SPRING |
| 4.7 | TRIGGER ASSEMBLY |
| 4.7.1 | TRIGGER |
| 4.7.2 | TRIGGER BAR |
| 4.7.3 | TRIGGER SAFETY PIN |
| 4.7.4 | TRIGGER SAFETY SPRING |
| 4.7.5 | TRIGGER SAFETY |
| 4.7.6 | TRIGGER SPRING |
| 4.8 | SLIDE CATCH SPRING |
| 4.9 | SLIDE CATCH |
| 4.10 | TRIGGER PIN |
| 4.11 | TAKEDOWN PIN |
| 4.12 | REAR SUPPORT PIN |
| 4.13 | REAR SUPPORT PIN |
| 5 | GRIP ASSEMBLY |
| 5.1 | GRIP |
| 5.2 | MAGAZINE RELEASE |
| 5.3 | MAGAZINE RELEASE SPRING |
| 5.4 | BACKSTRAP SMALL |
| 5.5 | BACKSTRAP LARGE |
| 5.6 | BACKSTRAP PIN |
| 6 | MAGAZINE ASSEMBLY 11 ROUNDS |
| 6.1 | MAGAZINE BODY 11 ROUNDS |
| 6.2 | MAGAZINE SPRING |
| 6.3 | MAGAZINE SPRING PLATE |
| 6.4 | MAGAZINE BOTTOM |
| 6.5 | FOLLOWER |

## TAURUS SERVICE

Should your firearm require adjustment or repair, contact our Customer Care department at 800-327-3776.

Please follow these suggestions to expedite service in the United States to return any firearm to us for adjustment or repair.

1. Federal law permits you to return your firearm to the manufacturer for service via common carriers. However, state and local firearms laws vary greatly; you should consult your local prosecuting attorney regarding any restrictive laws in your jurisdiction regarding your shipment or receipt of firearms. With the above in mind, it is strongly recommended that any firearm sent to us for repair be sent through a federally licensed dealer.

2. All firearms must be shipped to us prepaid. WE WILL NOT ACCEPT COLLECT SHIPMENTS.

3. Warranty Service: If your product is covered under the Taurus® Limited Lifetime Warranty (https://warranty.taurususa.com ) or was manufactured prior to January 1, 2017, you must contact Taurus to receive warranty service. You may contact Taurus by calling 800-327-3776, logging onto https://taurususa.com, or in writing: Taurus, Attn: Warranty Service, 100 Taurus Way, Bainbridge, GA 39817. Please include a description of the claimed defect, along with your name, address, telephone number, model and serial number of your firearm, proof of purchase, and date of purchase.

4. FIREARMS MUST BE SHIPPED UNLOADED. Double check the chamber of your firearm before shipping. If firearms are sent to Taurus in a loaded condition, we are required by law to notify the Federal authorities.

5. DO NOT include telescopic sights, custom grips, holsters, or other accessories with any firearm shipped to us.

## PARTS

Firearms require periodic maintenance, inspection, adjustment and repair. If your pistol has a malfunction, be safe. Stop firing, "clear" and unload the pistol and take it to a qualified gunsmith. Before shooting it again, contact our Customer Care department if you have any questions.

If water, sand, or other foreign matter gets in your pistol, field strip it (see pages 24-25) and thoroughly clean it. Failure to keep your firearm clean and in proper working order can be dangerous.

Our Customer Care department maintains a full stock of replacement parts for current Taurus firearms. Even though most gunsmiths have the knowledge, training and ability to make the necessary repairs to your firearm, the skill and workmanship of any particular gunsmith is totally beyond our control. Should your firearm require service, return it to our Customer Care department.

Remember, unauthorized adjustments or parts replacement can void your warranty. If you choose to have someone else do the required work, the purchaser and/or installer of parts must accept full responsibility for the correct adjustment and function of the firearm.



## TAURUS® LIMITED LIFETIME WARRANTY

Taurus® hereby provides the following **LIMITED LIFETIME WARRANTY** to the original purchaser of the enclosed Taurus firearm subject to the terms and conditions set forth below. **THIS IS THE ONLY WARRANTY EXTENDED BY TAURUS COVERING THIS FIREARM**.

### What does the warranty cover and what is its duration?

Taurus warrants to the original purchaser that the enclosed firearm was made free of defects in material, function, and workmanship. Taurus promises to remedy any defect in material, function or workmanship for the entire time that the original purchaser owns the firearm. This warranty covers the firearm's finish, grips, magazines, sights or accessories for the first year. Any claims of defect related to lasers must be directed to the manufacturer of the laser. This warranty terminates automatically upon the transfer of this firearm to any individual or entity other than the original purchaser.

**Disclaimer and Limitation of Remedy**

**ANY IMPLIED WARRANTIES OF MERCHANTABILITY IMPARTED BY STATE LAW WILL BE LIMITED TO ONE (1) YEAR.**

Some States do not allow limitations on how long an implied warranty lasts, so the above-limitation may not apply to you.

**ANY AND ALL INCIDENTAL AND CONSEQUENTIAL DAMAGES ARE EXPRESSLY DISCLAIMED UNDER ALL CIRCUMSTANCES.**

Some States do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you. This **LIMITED LIFETIME WARRANTY** gives you specific legal rights, and you may also have other rights which vary from State to State.

Taurus will not be responsible for:

1. Defects or malfunctions resulting from careless handling, unauthorized adjustments or modifications.

2. Use of defective or improper ammunition, reloaded ammunition, corrosion, neglect, abuse, ordinary wear and tear or unreasonable use.

3. Criminal misuse, negligence or use under the influence of drugs or alcohol.

### How do you obtain warranty service?

The warranty becomes effective only if activated by the original purchaser within thirty (30) days of the purchase date by registering online at: https://warranty.taurususa.com or by calling Taurus at 800-327-3776.

You must contact Taurus to receive warranty service. You may contact Taurus by calling 800-327-3776, logging onto https://taurususa.com, or in writing: Taurus, Attn: Warranty Service, 100 Taurus Way, Bainbridge, GA 39817. Please include a description of the claimed defect, along with your name, address, telephone number, model and serial number of your firearm, proof of purchase, and date of purchase.

# NOTES

Always keep the muzzle pointed in a safe direction and finger off the trigger.

Always keep the muzzle pointed in a safe direction and finger off the trigger.



## IMPORTANT
## DO NOT DISCARD

**KEEP THIS MANUAL WITH THE FIREARM
UPON CHANGE OF OWNERSHIP.**

**TAURUS ARMAS S.A.**
Av. São Borja, 2181 – Prédio A
São Leopoldo/Fazenda São Borja
Rio Grande do Sul
93.035-411
Brasil

**TAURUS INTERNATIONAL
MANUFACTURING, INC.**
100 Taurus Way
Bainbridge, GA 39817
Telephone: 1-800-327-3776

**TAURUSUSA.COM**

045-0035-00 Rev. 1